ARTHUR B. DAVIS *vs.* INHABITANTS OF LONGMEADOW.

Hampden.     September 29, 1897. — November 24, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Defect of Highway — Negligence — Due Care — Death of Horse — Question for Jury.*

Where, in an action to recover damages for the death of a horse caused by an alleged defect in a highway, the question is whether the death was a consequence sufficiently direct and immediate to enable the plaintiff to recover, assuming that the way was defective, and that the person in charge of the horse was in the exercise of due care throughout the whole occurrence, if it appears that the driver reasonably thought that he could get through the mudhole where the accident occurred, and used due care in making the attempt, and after getting stuck in the mud at once made reasonable efforts to extricate the team therefrom, with the help of an additional horse, and having reason to think he could get through, and during this attempt the plaintiff's horse burst a blood-vessel and soon after died, the plaintiff is entitled to go to the jury.

TORT, to recover damages for the death of a horse, caused by an alleged defect in a highway in the defendant town.

At the trial in the Superior Court, before *Lilley*, J., there was evidence tending to show that the horse at the time of the accident, which occurred on April 17, 1896, was in good condition, and was attached with his mate to a loaded wagon; that at a point in the highway on Old Clay Hill, so called, there was a mud place, consisting of a thick clay mud, extending about two rods and the full width of the travelled part of the highway, which was in that place about twenty-five feet; that this thick mud would, by gradual settling of the wagon, take in a heavy wagon and load to the distance of from one and a half to two feet; that the team in question attempted to drive through the place in very nearly the middle of the twenty-five feet travelled way, in about the tracks of a lighter loaded team that had just succeeded in getting through the place, and at a place that seemed to the driver of this team, and to other witnesses who were on the spot at the time, as good a track or part of the road as could have been selected for getting through that place, and that the driver reasonably thought that he could get through; that the

wagon, the horses being driven with due care, stopped from the heaviness of the road, when all four wheels of the wagon had entered the mud place and the horses were also in it; that the driver of the lighter loaded team unhitched one of his horses, and took it back and hitched it to the neap of the wagon in the mud; that they then tried the three horses once or twice — most of the witnesses saying twice — to see if they could draw the wagon through the place, but did not succeed; that the drivers spoke to the horses without using the whip to try the load, and the horses pulled as hard as they could; that at the time the attempt was made the wagon was not in very deep, but went deeper nearly to the axletrees; that the horse in question, being deeper in than his mate, was in when the effort was made a little over the ankles, and then sank to his knees; that the drivers reasonably thought that they could get the team through the mud, and that they did not know the real depth of it further than as revealed by the depth to which the horse and wagon had gone before the effort to draw the wagon out; that after the attempt the horse in question, by a strong effort, raised himself up apparently to secure a better footing, when he lost his footing and fell to the road; and that he was at once unharnessed and helped to get up, when he showed signs of having been injured, and died of rupture of a blood-vessel within forty-five or fifty minutes.

There was also evidence that the place could have been remedied by shovelling out, from any given width of the road, the clay and mud to the depth of one foot, and putting in its place sand to the depth of about one foot.

Upon the request of the defendant, the judge ruled that the plaintiff was not entitled to recover, and directed a verdict for the defendant, and at the request of the parties reported the case for the determination of this court. If the ruling was correct, judgment was to be entered upon the verdict; otherwise, the case was to stand for trial.

*W. R. Heady*, for the plaintiff.

*C. L. Long*, for the defendant.

ALLEN, J. It has often been held that cities and towns are responsible only for the direct and immediate loss occasioned by a defective highway. *Raymond* v. *Haverhill*, 168 Mass. 382.

*Jenks* v. *Wilbraham*, 11 Gray, 142.  *Marble* v. *Worcester*, 4 Gray, 395.  The question in this case is, whether the death of the plaintiff's horse was a consequence sufficiently direct and immediate to enable the plaintiff to recover, assuming that the way was defective, and that the person in charge of the horse was in the exercise of due care throughout the whole occurrence. Upon the facts reported, we think the plaintiff was entitled to go to the jury.  If the driver reasonably thought that he could get through the mud-hole, and used due care in making the attempt, and after getting stuck in the mud at once made reasonable efforts to extricate the team therefrom, with the help of an additional horse, and having reason to think he could get through, and during this attempt the plaintiff's horse burst a blood-vessel and soon after died, this should be deemed a direct and immediate consequence of the defect in the road.  The driver had a right, if it was not his duty, to do what he reasonably could to get the team out from the mud-hole.  He acted promptly and at once.  It was, in effect, but one incident.  *Tuttle* v. *Holyoke*, 6 Gray, 447.  *Stickney* v. *Maidstone*, 30 Vt. 738.  *Page* v. *Bucksport*, 64 Maine, 51.  *Chicago* v. *Schmidt*, 107 Ill. 186.                         *Case to stand for trial.*